**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| ROBERT L. CITROEN, LAW CORP., ) ) Plaintiff, ) ) vs. ) ) MICRON OPTICS, INC., ) ) Defendant. ) | 3:16-cv-00570-RCJ-WGC<br><br>**ORDER** |

This case arises out of the alleged breach of an assigned settlement agreement. Pending before the Court is a Motion to Dismiss Counterclaim (ECF No. 13).

I.  **FACTS AND PROCEDURAL HISTORY**

   A.  **Facts Alleged in the Complaint**

On April 1, 2014, Plaintiff Robert L. Citroen, Law Corp. ("RLC") entered into an agreement ("the Agreement") with Defendant Micron Optics, Inc. ("Micron"). (Compl. ¶ 10, ECF No. 1-1, at 4). Under the Agreement, Micron was to pay RLC $12,500 per quarter for ten years. (*Id.* ¶ 12). Micron made seven payments from July 1, 2014 to January 1, 2016 but failed to make the April 1, 2016 payment or any payment thereafter. (*Id.* ¶ 13).

///

///

**B.     Facts Alleged in the Counterclaim**

**1.     Citroen's Business Interests**

Counterdefendant Robert L. Citroen was a member of Micron's board of directors since sometime prior to 2000 until November 4, 2011. (*See* Answer & Countercl. ¶ 12, ECF No. 5). In or around 2004, Micron Optics International A.G. ("MOIAG") was formed as a Liberian entity to resell Micron's products in Asia. (*Id.* ¶ 14). MOIAG's stock was held equally by Karlsson & Bergkvist (Schweiz) A.B. ("K&B") and Metallikon A.G. until 2014. (*Id.*). K&B is a Swiss entity controlled by Andrei Csipkes and owned by Csipkes's mother, and Metallikon is a Liberian entity owned or controlled by Citroen. (*Id.* ¶¶ 15–16). Csipkes was Micron's Chief Oprating Officer from 2000 to 2015. (*Id.* ¶ 19). Citroen failed to disclose his interest in Metallikon or Csipkes's interest in K&B to Micron's officers, directors, or shareholders. (*Id.* ¶ 17). MOIAG profited from its relation with Micron and distributed those profits to its shareholders Metallikon and K&B. (*Id.* ¶ 18). As owner or controller of Metallikon, a shareholder of MOIAG, Citroen profited when MOIAG did while also serving as a director of Micron as well as its legal counsel. (*Id.*). In 2007, Citroen and Csipkes formed Technica, S.A. to manufacture optical products and components for Micron in China, and Technica's stock was held equally by Metallikon and K&B until 2014. (*Id.* ¶ 20). Citroen failed to disclose his or Csipkes's interests in Technica to Micron's officers, directors, or shareholders. (*Id.* ¶ 21). Technica profited from its relation with Micron and distributed those profits to its shareholders Metallikon and K&B. (*Id.* ¶ 21). As owner or controller of Metallikon, a shareholder of Technica, Citroen profited when Technica did while also serving as a director of Micron as well as its legal counsel. (*Id.*). Metallikon and K&B transferred their interests in Technica to other entities in July 2014. (*Id.* ¶ 20).

### 2. Citroen's Federal Convictions

Citroen was a member of the State Bar of California from 1978 until he voluntarily resigned in 2008 two months before pleading guilty to federal crimes related to passport fraud. (*Id.* ¶¶ 9, 22–26). Citroen failed to disclose his convictions to Micron's officers, directors, or shareholders and continued to provide legal advice to Micron and to charge it for those services, totaling $132,233.70. (*Id.* ¶¶ 25–29).

### 3. The Agreement

On or about April 1, 2014 Micron entered into the Agreement with Metallikon and K&B under which those entities would sell their MOIAG stock to Micron for $100,000. (*Id.* ¶ 32). The Agreement also represented the settlement of a purported debt owed by MOIAG to S.A. des Establissements Karoly ("SADEK") for various services. (*Id.* ¶ 33). Under the Agreement, Micron would assume a settled amount of $500,000 in debt to SADEK, payable in quarterly installments of $12,500. (*Id.*). The same day, SADEK assigned its interest in the Agreement to RLC, acknowledging that RLC, as SADEK's subcontractor, had provided the most vital services to MOIAG. (*Id.* ¶ 34). "In other words, the purported obligation and debt owed by MOIAG (operated by Csipkes and Citroen) to SADEK, which supposedly resulted from services performed by [RLC], was passed along as a debt and obligation to Micron." (*Id.* ¶ 35). Citroen failed to disclose his and RLC's interests in the Agreement to Micron's directors or shareholders. (*Id.* ¶¶ 36–37). Micron made seven quarterly payments under the Agreement but stopped making payments after March 2016 when it discovered Citroen's 2008 resignation from the State Bar of California, his federal convictions, and his control, ownership, and/or financial interests in Metallikon, MOIAG, and Technica, none of which he had previously disclosed. (*Id.* ¶¶ 39–41).

///

### C. Procedural History and the Present Motion

RLC sued Micron in state court for breach of contract, unjust enrichment, conversion, anticipatory breach, and misrepresentation. Micron removed, answered, and filed counterclaims against RLC for breach of contract, contractual and tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraud in the inducement, and constructive fraud. Micron also listed counterclaims against Robert L. Citroen in his personal capacity for tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraud in the inducement, constructive fraud, and aiding and abetting fraud. RLC answered the Counterclaim and has asked the Court to dismiss the counterclaims brought against Citroen in his personal capacity.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

     A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is complete and that liability necessarily, not only possibly, follows (assuming the allegations of fact are true).

     "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary

1   judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule

2   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay

3   Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court

4   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

5   summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

6   2001).

### III. ANALYSIS

RLC argues that a counterclaim may only be asserted against a party to a complaint. It appears to be correct based on a cursory reading of the rules, *see* Fed. R. Civ. P. 13(a)(1), (b), and relevant commentary, *see* 6 Charles Alan Wright et al., Federal Practice & Procedure § 1404 & n.3, at 15–16 (collecting cases) ("The general rule appears to be that in an action brought in a representative capacity, defendant cannot assert a counterclaim against plaintiff in plaintiff's individual capacity because it would not be a counterclaim against an 'opposing party.'"). The rules specifically provide that a non-plaintiff counterdefendant should be joined via Rules 19 or 20. *See* Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."). Micron responds that Citroen has been properly joined as a necessary party under Rule 19 because he is subject to service of process, his joinder does not deprive the Court of subject matter jurisdiction, and in Citroen's absence the Court cannot accord complete relief among RLC and Micron, *see* Fed. R. Civ. P. 19(a)(1)(A), or that he is properly joined permissively under Rule 20(a)(2).

### A. Rule 19

The Court agrees that Citroen is subject to service in this District and that his joinder will not destroy diversity (it does not appear disputed that RLC and Citroen are both Nevada citizens

and that Micron is a Georgia citizen).  The Court disagrees that Citroen is a necessary party, however.  Micron does not argue why it believes the Court cannot afford complete relief as between RLC and Micron without Citroen's joinder as a counterdefendant except to argue that its claims against Citroen are compulsory counterclaims.  But that is simply not true.  It may have been true if Citroen had joined in the Complaint as a plaintiff.  But he didn't, and it is circular for a defendant to argue that a non-party is a necessary party under Rule 19 by virtue of the fact that a claim the defendant has against the non-party would be a compulsory counterclaim under Rule 13 if the non-party had joined the complaint as a plaintiff.  Compulsory counterclaims need only be—indeed, as already noted, like permissive counterclaims, they *may* only be—brought against an existing plaintiff. *See* Fed. R. Civ. P. 13(a)(1), (b).  Before any claim Micron may have against Citroen might be assessed as compulsory, it must first be against an existing party.  Micron has no compulsory counterclaims against Citroen unless and until he is joined as a plaintiff.  He has not chosen to join the Complaint permissively under Rule 20(a)(1), and Micron has proffered no reason why he need be joined under Rule 19.  Nor does Citroen's alleged position as Micron's former counsel and a former officer or director of Micron mean that his joinder is necessary for relief between RLC and Micron.  It simply means that his testimony will likely be important.

### B.     Rule 20

Defendants may be permissively joined under Rule 20(a)(2) so long as relief is sought against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence or series thereof or if any question of law or fact common to all defendants will arise. *See* Fed. R. Civ. P. 20(a)(2)(A)–(B).  This test is easily satisfied here.  RLC replies that Rule 20(a)(2) governs only the joinder of multiple defendants via complaint, not the

joinder via counterclaim of additional parties as counterdefendants if those parties are not already plaintiffs. But relevant commentary is to the contrary. *See* 6 Charles Alan Wright et al. § 1434, at 311–13 § n.5 ("[The 1966 revision of Rule 13(h) made] it clear that if a counterclaim . . . has been properly asserted, then any person whose joinder in the original action would have been proper under Rule 20 . . . may be added as a party to the counterclaim . . . .") (collecting cases).

### C.     Waiver

Finally, RLC argues that Micron is equitably estopped to deny its obligation to RLC due to its assumption of the Agreement. *See United Bhd. of Carpenters Local No. 1780 v. Dahnke*, 714 P.2d 177, 178–79 (Nev. 1986) ("[E]quitable estoppel operates to prevent the assertion of legal rights that in equity and good conscience should be unavailable because of a party's conduct."). The Court will not dismiss the Counterclaim based on equitable estoppel. Equitable estoppel is an affirmative defense, *see Idaho Res., Inc. v. Freeport-McMoran Gold Co.*, 874 P.2d 742, 743 (Nev. 1994), and facts showing the defense do not appear on the face of the Counterclaim.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Counterclaim (ECF No. 13) is DENIED.

IT IS SO ORDERED.

DATED: This 17th day of February, 2017.

_____
ROBERT C. JONES
United States District Judge