**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT L. CITROEN, LAW CORP., | |
| Plaintiff, | 3:16-cv-00570-RCJ-WGC |
| vs. | |
| MICRON OPTICS, INC., | **ORDER** |
| Defendant. | |

This case arises out of the alleged breach of an assigned settlement agreement. Pending before the Court is a motion for partial summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A. Facts Alleged in the Verified Complaint

As of April 1, 2014, Plaintiff Robert L. Citroen, Law Corp. ("RLC") and Defendant Micron Optics, Inc. ("Micron") were parties to a Stock Purchase Agreement ("the Agreement"). (Compl. ¶ 10, ECF No. 1-1, at 4). Under the Agreement, Micron was to pay RLC $12,500 per quarter for ten years. (*Id.* ¶ 12). Micron made seven payments from July 1, 2014 to January 1, 2016 but failed to make the April 1, 2016 payment or any payment thereafter. (*Id.* ¶ 13).

///

///

**B.     Facts Alleged in the Counterclaim**

**1.     Citroen's Business Interests**

Counterdefendant Robert L. Citroen was a member of Micron's board of directors since sometime prior to 2000 until November 4, 2011. (*See* Answer & Countercl. ¶ 12, ECF No. 5). In or around 2004, Micron Optics International A.G. ("MOIAG") was formed as a Liberian entity to resell Micron's products in Asia. (*Id.* ¶ 14). MOIAG's stock was held equally by Karlsson & Bergkvist (Schweiz) A.B. ("K&B") and Metallikon A.G. ("Metallikon") until 2014. (*Id.*). K&B is a Swiss entity controlled by Andrei Csipkes and owned by Csipkes's mother, and Metallikon is a Liberian entity owned or controlled by Citroen. (*Id.* ¶¶ 15–16). Csipkes was Micron's Chief Oprating Officer from 2000 to 2015. (*Id.* ¶ 19). Citroen failed to disclose his interest in Metallikon or Csipkes's interest in K&B to Micron's officers, directors, or shareholders. (*Id.* ¶ 17). MOIAG profited from its relation with Micron and distributed those profits to its shareholders Metallikon and K&B. (*Id.* ¶ 18). As owner or controller of Metallikon, a shareholder of MOIAG, Citroen profited when MOIAG did while also serving as a director of and legal counsel to Micron. (*Id.*). In 2007, Citroen and Csipkes formed Technica, S.A. ("Technica") to manufacture optical products and components for Micron in China, and Technica's stock was held equally by Metallikon and K&B until 2014. (*Id.* ¶ 20). Citroen failed to disclose his or Csipkes's interests in Technica to Micron's officers, directors, or shareholders. (*Id.* ¶ 21). Technica profited from its relation with Micron and distributed those profits to its shareholders Metallikon and K&B. (*Id.* ¶ 21). As owner or controller of Metallikon, a shareholder of Technica, Citroen profited when Technica did while also serving as a director of Micron as well as its legal counsel. (*Id.*). Metallikon and K&B transferred their interests in Technica to other entities in July 2014. (*Id.* ¶ 20).

### 2. Citroen's Federal Convictions

Citroen was a member of the State Bar of California from 1978 until he voluntarily resigned in 2008 two months before pleading guilty to federal crimes related to passport fraud. (*Id.* ¶¶ 9, 22–26). Citroen failed to disclose his convictions to Micron's officers, directors, or shareholders, and he continued to provide legal advice to Micron and to charge it for those services, totaling $132,233.70. (*Id.* ¶¶ 25–29).

### 3. The Agreement

On or about April 1, 2014 Micron entered into the Agreement with Metallikon and K&B under which those entities would sell their MOIAG stock to Micron for $100,000. (*Id.* ¶ 32). The Agreement also represented the settlement of a purported debt owed by MOIAG to S.A. des Establissements Karoly ("SADEK") for various services. (*Id.* ¶ 33). Under the Agreement, Micron would assume a settled amount of $500,000 in debt to SADEK, payable in quarterly installments of $12,500. (*Id.*). The same day, SADEK assigned its interest in the Agreement to RLC ("the Assignment"), acknowledging that RLC, as SADEK's subcontractor, had provided the most vital services to MOIAG. (*Id.* ¶ 34). "In other words, the purported obligation and debt owed by MOIAG (operated by Csipkes and Citroen) to SADEK, which supposedly resulted from services performed by [RLC], was passed along as a debt and obligation to Micron." (*Id.* ¶ 35). Citroen failed to disclose his and RLC's interests in the Agreement to Micron's directors or shareholders. (*Id.* ¶¶ 36–37). Micron made seven quarterly payments under the Agreement but stopped making payments after March 2016 when it discovered Citroen's 2008 resignation from the State Bar of California, his federal convictions, and his control, ownership, and/or financial interests in Metallikon, MOIAG, and Technica, none of which he had previously disclosed. (*Id.* ¶¶ 39–41).

### C. Procedural History and the Present Motion

RLC sued Micron in state court for breach of contract, unjust enrichment, conversion, anticipatory breach, and misrepresentation. Micron removed, answered, and filed counterclaims against RLC for breach of contract, contractual and tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraud in the inducement, and constructive fraud. Micron also listed counterclaims against Citroen in his personal capacity for tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraud in the inducement, constructive fraud, and aiding and abetting fraud. RLC answered the Counterclaim and asked the Court to dismiss the counterclaims brought against Citroen in his personal capacity. The Court denied the motion, ruling that although Citroen was not a necessary party under Rule 19, he could be permissively joined as a Counterdefendant under Rule 20. RLC has now moved for partial offensive summary judgment on the issue of liability for breach of contract. In the alternative, RLC asks for a ruling that it is subject only to contractual defenses that would have been valid if asserted by Micron against MOIAG but not those defenses that can only be asserted against RLC.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent

evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

RLC has adduced the Agreement (attached to the Verified Complaint) under which Mircon agreed to assume the obligations of Metallikon and K&B to pay the sums to SADEK as alleged in the Verified Complaint, i.e., $12,500 quarterly for 10 years. (*See* Agreement para. 1.4 & Ex. B, second unnumbered paragraph, Mar. 31, 2014, ECF No. 1-1, at 20). Exhibit B makes clear SADEK's ability to assign the right to receive the payments. (*See id.* Ex. B, second unnumbered paragraph). RLC has also adduced the Assignment (also attached to the Verified Complaint) whereby SADEK assigned to RLC its right to receive payment from Micron under the Agreement. (*See* Assignment, Apr. 1, 2014, ECF No. 1-1, at 18). RLC has also adduced a declaration alleging Micron's breach of the Agreement. (*See* Citroen Decl. ¶¶ 5–14, ECF No. 31-1).

In opposition, Micron does not deny the existence of either agreement or that it has ceased making payments but argues that it is not liable to RLC because the Agreement was not properly novated via the Assignment or otherwise. Micron also relies on affirmative defenses, such as rescission and fraud. As to affirmative defenses, Micron asks the Court to deny the present motion without prejudice under Rule 56(d) while it completes discovery.

The Court rejects the novation argument. A novation is an agreement of all previous and new parties to a contract to the effect that the previous parties are no longer subject to the contract and the new parties are. A novation must be assented to by all previous and new parties. A novation, however, is not required for a new party to assume the duty of a previous party. That is, except in special circumstances, e.g., where the law or contract prohibits it, where it would change the nature or character of performance, or where the contract is for personal services, an obligor under a contract may unilaterally delegate his duties to a new party. Restatement (Second) of Contracts § 318 (1979). There is no question of fact that Metallikon and K&B validly delegated their duty to pay SADEK to Micron via the Agreement on March 31, 2014. Nor is a novation required for a previous party to assign its rights to a new party, so no novation was required when SADEK assigned to RLC the right to receive payment from Micron under the Agreement via the Assignment. *See id.* § 317(1) & cmt. a, illus. 1. There is no evidence that the Agreement was unassignable. *See id.* § 317(2)(c). Indeed, as noted *supra*, assignment was explicitly permitted therein, although such a provision was not required, as assignability is the default rule. *See id.* Nor is there any evidence of such an assignment having been forbidden by statute or any public policy, or that the obligor's duty under the Agreement was in any way affected by assignment. *See id.* § 317(2)(a)–(b). There is no question of fact that

SADEK validly assigned its right to payment from Micron to RLC via the Assignment on April 1, 2014.

In summary, Plaintiff is entitled to partial summary judgment on the issue of liability for breach of contract, but the Court will not address affirmative defenses unless and until dispositive motions are filed on the issue after discovery closes (July 17, 2017 under the current version of the Scheduling Order).

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 31) is GRANTED IN PART as to liability for breach of contract and DENIED IN PART, without prejudice, as to affirmative defenses.

IT IS SO ORDERED.

DATED: This 24th day of May, 2017.

_____
ROBERT C. JONES
United States District Judge