# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT L. CITROEN, LAW CORPORATION, a Nevada corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>MICRON OPTICS, INC., a Georgia corporation,<br><br>    Defendant.<br><br>MICRON OPTICS, INC., a Georgia corporation,<br><br>    Counterclaimant,<br><br>vs.<br><br>ROBERT L. CITROEN, LAW CORPORATION, a Nevada corporation, ROBERT L. CITROEN, an individual,<br><br>    Counter-Defendants. | 3:16-cv-00570-RCJ-WGC<br><br>**ORDER**<br><br>Re: ECF No. 42 |

    Before the court is Defendant/Counterclaimant Micron Optics, Inc.'s (Micron) Motion to Compel Income and Tax Records. (ECF Nos. 42, 42-1 to 42-16.) Plaintiff/Counter-Defendants Robert L. Citroen, Law Corporation and Robert L. Citroen, an individual (collectively, Citroen) filed a response. (ECF No. 45.) Micron filed a reply (ECF Nos. 48, 48-1 to 48-5), as well as a supplemental reply (ECF Nos. 50, 50-1 to 50-4). The court held a hearing on the motion on August 25, 2017, where it heard argument from the parties. (Minutes at ECF No. 51.) The court issues the instant Order granting Micron's motion.

/ / /

# I. BACKGROUND

**A. Robert L. Citroen, Law Corporation's Complaint**

Robert L. Citroen, Law Corporation sued Micron in State court on August 18, 2016. (ECF No. 1-1 at 4.) The complaint alleges that Citroen and Micron entered into an assignment agreement that was characterized as a settlement payment to resolve claims for amounts due for advice and services provided but not paid for. The complaint alleges that Micron agreed to pay Citroen a total of $500,000 ($12,500 per quarter per year for ten years). Micron made payments on July 1, 2014, October 1, 2014, in all four quarters of 2015, and in January and April of 2016, but thereafter purportedly refused to pay, asserting the payments were for legal services. Citroen contends that Micron breached the agreement, and also includes claims for unjust enrichment, conversion, anticipatory breach and misrepresentation.

**B. Micron's Counterclaims**

Micron removed the action to federal court on October 3, 2016 (ECF No. 1), and shortly thereafter filed its answer and counterclaims against Robert L. Citroen, Law Corporation and Robert L. Citroen individually (ECF No. 5). Micron claims that Citroen provided (or represented they were providing) outside legal services to Micron until sometime in November 2011. Micron alleges that Citroen is the president of Citroen Law Corporation, Micron's former legal counsel, and was a member of Micron's board of directors from 2000 until November 14, 2011. Micron states that in 2004, Micron Optics International AG (MOIAG) was formed as an entity under the laws of Liberia to operate as an independent reseller of Micron's products in Asia. MOIAG's stock was held equally by Karlsson & Bergkvist (Schweiz) A.B. (K&B) and Metallikon A.G. until 2014.

Micron claims that Citroen failed to disclose that he was operating, controlling and/or had an ownership interest in Metallikon, which held half of MOIAG's shares. Micron goes on to allege that MOIAG profited from its relationship with Micron and distributed profits to shareholders, including Citroen (through Metallikon) and that Citroen received distributions while he was legal counsel/board member to Micron. Micron avers that Citroen and others set up another entity, Technica, S.A., for their own financial benefit, and that Citroen's wife was an undisclosed owner/operator of both MOIAG and Technica. Micron asserts that Citroen, through a fiduciary position with Micron, used these entities to funnel profits and structure the $500,000 payoff from Micron and improperly received self-payments

through fraud.

Micron alleges that the agreement referenced by Citroen was precipitated by an agreement entered into by Micron with K&B and Metallikon for the sale of MOIAG, where K&B and Metallikon agreed to sell their shares of issued stock of MOIAG to Micron for $100,000, and the agreement also included a provision for settlement of a purported debt for services provided by Sades Establissements Karoly (SADEK) to MOIAG and owed by MOIAG, which was to be assumed by Micron. This included payment of $500,000 to SADEK in quarterly installments of $12,500. The same date the agreement was entered into, SADEK assigned its interest to Citroen. According to Micron, Citroen's interest in the agreement was not disclosed to or approved by Micron's board of directors or shareholders. Micron made 7 quarterly payments, for a total of $87,500.

Micron contends that in 2008, Citroen had resigned his law license after pleading guilty to a felony of possession of five or more false identification documents and false statements, but failed to disclose this to Micron while still billing it for legal services. Micron did not discover this until March of 2016, along with his financial interests in Metallikon, MOIAG and Technica, and stopped making the quarterly payments.

**C. Discovery Requests**

In discovery, Micron requested documents and information relating to Citroen's financial interests in the entities involved in the alleged MOIAG fraud scheme. In its initial set of requests for production of documents, it sought, *inter alia*, documents reflecting income, funds or benefits from any source from January 1, 2004 to the present, as well as tax returns for the past fifteen years, including attachments, schedules and forms. (ECF No. 42-4 at 5, Requests 1, 3.) Citroen objected to the first request on grounds that it was overbroad; unclear regarding the use of the terms "funds" and "benefits"; that the documents were in Micron's possession; and that it sought confidential, privileged documents that are unrelated to this lawsuit. (ECF No. 42-5 at 4.) Without waiving the objections, Citroen stated it did not have any documents reflecting income, funds or benefits from Micron. (*Id.*) In response to the request for tax returns, Citroen objected that the request was overbroad and sought confidential, privileged documents unrelated to this case. (ECF No. 42-5 at 4-5.) Without waiving the objections, Citroen responded that it had no responsive documents. (*Id.*)

The parties met and conferred, and Micron explained that it sought the documents in connection with its allegations that Citroen had an ownership/financial interest in the above-described entities related to the fraudulent scheme. (ECF Nos. 42-6 at 2-6, 42-2 at 7-8 ¶ 7, 42-7 at 2.) During the meet and confer, Micron's counsel contends that Citroen's counsel represented that Citroen no longer had any records or tax documents responsive to the requests, saying: "he is an old man and doesn't keep copies of things." (*Id.*) Following the meet and confer, Citroen served supplemental responses, but they did not significantly differ from the original responses. (ECF No. 42-8.) Citroen's counsel reiterated that Citroen "do[es] not have many of the documents that you requested." (ECF No. 42-7 at 2.)

In light of the representation that Citroen did not have the documents requested, Micron served a second set of discovery asking for executed authorizations to allow Micron to obtain the tax records directly from the IRS; for documentation of income, funds or benefits received from MOIAG, Technica, Metallikon, K&B and SADEK; and, for the name and contact information for Citroen's accountants and tax preparers/consultants used to prepare tax returns. (ECF Nos. 42-9 at 5, 42-11 at 5, 42-10 at 5-6, and 42-12 at 5.)

Citroen responded with objections, and produced no documents. Citroen objected to the request for authorizations for the tax returns on the basis that it was not a request for production, was ambiguous, unlimited as to time, sought confidential, privileged information, and was unrelated to this case. (ECF No. 42-13 at 3, ECF No. 42-14 at 4.)

In response to the requests for documents of income, funds or benefits received from the other entities, Citroen objected that the requests were overbroad, unlimited as to time, sought irrelevant information, and were ambiguous. (ECF No. 42-13 at 4-6; ECF No. 42-14 at 4-6.) Without waiving the objections, they responded that they did "not believe there are any documents reflecting any payments" from these entities in the past ten years. (*Id.*)

As to the request for contact information for accountants and tax preparers/consultants, Citroen objected that the requests were ambiguous, unlimited as to time, sought confidential, privileged information, and sought irrelevant information. (ECF No. 42-15 at 3-4, ECF No. 42-16 at 3-4.)

The parties met and conferred again on July 3, 2017. (ECF No. 42-2 at 5 ¶¶ 20-22.) Citroen maintained that the information sought was confidential and not relevant, while Micron continued to

assert that the information was relevant to its counterclaims. (*Id.*) Citroen represented it would produce any 1099s from those entities, but refused to provide the information for the accountants and tax preparers/consultants or authorize the release of the tax returns. (*Id.*)

On July 7, 2017, Citroen represented it did not receive a 1099 from SADEK, MOIAG, Technica, or Metallikon and would supplement their response, but as of July 20, 2017, they had not done so. (ECF No. 42-2 at 6 ¶ 24.)

**D. Motion to Compel**

In its motion to compel, Micron seeks an order compelling Citroen to produce income and tax records from 2004 to the present, and to pay its costs and attorney's fees incurred in connection with bringing this motion. It maintains that the records are directly relevant to its defenses and counterclaims.

In their response, Citroen asserts that they already responded that they do not have the discovery sought by Micron. (ECF No. 45 at 2.) Citroen also asserts that Micron has not shown the information sought is relevant to its claims or defenses, that it has a compelling need for the information, and that it cannot be obtained from another source that is more convenient, less burdensome and less expensive. Citroen contends that the tax returns would not assist Micron because while they would show the total income received by Citron, they would not show the source. They add that 1099s might show the source, but these are all foreign entities and do not issue 1099s.

Citroen states that because Micron has not shown the information sought is relevant, it has no duty to show other sources exist from which Micron can obtain the information, but in any event argues that depositions and documents show how payments from MOIAG were made and why. Citroen points to depositions of Donna Biddiscombe, Jeff Miller, Andrei Csipkes, and Todd Haber.

In its reply, Micron maintains that the information sought is directly related to its claims and defenses based on the allegation that Citroen had a financial or ownership interest in these entities (which Citroen has denied in a pending motion), and demonstrates that Citroen breached fiduciary duties. Micron asserts that the recent deposition testimony contradicts Citroen's representations concerning his financial interest in the entities. Micron points to deposition testimony by Csipkes (Micron's former CFO) and Miller (Micron's former CEO) that Citroen profited from the relationship between MOIAG and Micron; that he received a portion of the commission Micron paid to MOIAG; that

Citroen advised them not to disclose their ownership or financial interests in MOIAG to Micron's board; and that Citroen controlled Metallikon and helped arrange for Miller to pick up packages of thousands of dollars of cash from Metallikon's president in Switzerland. Micron supplemented its reply brief with the relevant portions of the deposition transcripts.

While Citroen claims it has no responsive documents, Micron argues that Citroen's deposition testimony reveals that he undertook no efforts to look for responsive documents, as he testified he "might" have responsive documents, but he would need to be paid before he would look through his records.

Insofar as Citroen contends that Micron can obtain the requested information from Miller, Csipkes and Haber, Micron argues that they do not have access to Citroen's income records.

## **II. DISCUSSION**

**A. Motion to Compel**

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[A] party may move for an order compelling disclosure of discovery. The movant must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). A motion to compel may be made if a party fails to answer an interrogatory or produce documents, or if there is an evasive or incomplete response or disclosure. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv), (4).

"The party opposing discovery has the burden of showing the discovery is irrelevant, overly broad, or unduly burdensome." *Fosbre v. Las Vegas Sands Corp.*, 2:10-cv-00765-APG-GWF, 2016 WL 54202, at * 4 (D. Nev. Jan. 5, 2016) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2000)). "However, when a request for discovery is overly broad on its face or when relevancy

is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Id*. (citation and internal quotation marks omitted).

"Discovery regarding a party's financial condition may be obtained if it is relevant to the claims or defenses in the case." *Id*. (citations omitted). "Where inquiry into a party's financial condition is of only marginal relevance and based on speculative assertions, however, the court may in its discretion deny such discovery." *Id.* (citations omitted). "With the exception of tax returns, no special rules or limitations apply to the discovery of relevant financial information."

**1. Financial Information**

Documents reflecting income, funds or benefits to Citroen from MOIAG, Technica, Metallikon, K&B and SADEK are directly relevant to the defenses and counterclaims being asserted by Micron. Micron alleges that Citroen engaged in fraud and violated fiduciary duties while serving as legal counsel and a member of Micron's board of directors because he had a financial or ownership interest in these entities that were involved in deals with Micron. At the hearing on this motion, counsel for both parties attempted to clarify Citroen's role with respect to these entities, and while they described a complex set of facts concerning these entities, it is clear that Citroen not only served in a role as legal counsel, business advisor and/or a director with Micron, but also had involvement to some degree with certain of these other entities. Therefore, income or benefits Citroen received from these entities goes to the heart of Micron's defenses and counterclaims, and are thus deemed relevant under Federal Rule of Civil Procedure 26. Micron contends that the fraudulent scheme was carried out beginning in 2004 through 2016, and that Citroen was a member of Micron's board of directors and served as legal counsel for years before that; therefore, 2004 to 2016 is a reasonable time frame.

While Citroen asserted in responses that they "[did] not *believe* there [we]re any documents reflecting payments" from these entities, this is an insufficient response. Citroen is required to produce documents in their possession, custody or control. Fed. R. Civ. P. 34(a)(1). This has been interpreted to mean documents the party has a legal right to obtain, even if the party does not actually possess a copy of the document. *See In re Bankers Trust Co.*, 61 F.3d 465 (9th Cir. 1995) (citations omitted) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal

7

right to obtain the documents on demand."). In addition, the responding party is required to undertake a *reasonable* search for the requested documents. *See Sell v. Country Life Ins. Co.,* 189 F.Supp.3d 925, 933 (D. Ariz. June 1, 2016). Citroen's language that they do not "believe" there are responsive documents, coupled with Mr. Citroen's deposition testimony that he "might" have documents, and that he has a volume of documents in an office in the Palm Desert area but that he would not look through them unless he were paid, is indicative that he has not undertaken a reasonable search for responsive documents.

Micron's motion to compel Citroen to produce documents reflecting income, funds or benefits Citroen received from Micron, MOIAG, Technica, Metallikon, K&B and SADEK from 2002 to 2016 is granted. Citroen shall undertake a reasonable search for documents in their actual possession, as well as those to which they have a legal right to obtain, even if they do not have actual possession of the documents, and then shall supplement their responses. In addition, given the cavalier position Citroen has taken to date concerning the obligation to undertake such a search, Micron's motion to compel Citroen to provide Micron with the identification and contact information for accountants and tax preparers/consultants utilized by Citroen from 2002 to 2016 is also granted. Citroen shall provide this information so that Micron may subpoena documents from their accountants and tax preparers reflecting income, funds or benefits Citroen received from Micron, MOIAG, Technica, Metallikon, K&B and SADEK between 2004 and 2016.

The parties are directed to meet and confer and enter into a mutually agreeable stipulation concerning a protective order to protect the confidentiality of these documents, and submit the stipulation and a proposed order to the court.

**2. Tax records**

"Courts accord greater privacy protection to federal tax returns because the tax system depends on accurate reporting of income and deductions by taxpayers who might be less than candid on their returns if they were made available to opposing parties in the ordinary course of litigation." *Fosbre*, 2016 WL 54202 at * 5 (citations omitted). "Tax returns may be discovered, however, where the party's income or financial condition is in issue and where adequate, verifiable information regarding income is not otherwise available to the requesting party." *Id*. (citation omitted). "If the requesting party shows

the relevance of the producing party's tax returns, then the burden shifts to the producing party to show that other sources exist from which defendants may readily obtain the information." *Id*. (citation omitted).

As discussed above, Micron has shown the relevance of the tax returns to the defenses and counterclaims asserted against Citroen. While Citroen argues that the documents will not show the information Micron is seeking, that is for Micron to determine once it has obtained the documents. At the very least, in light of its allegations of fraud and breach of fiduciary duties, the tax returns are relevant to compare the amounts shown in the tax records with other documentation or testimony concerning Citroen's financial interests in these entities.

Therefore, the burden is shifted to Citroen to show other sources exist from which Micron may readily obtain the information. Citroen says this information can be obtained through other sources, such as Mr. Miller, Mr. Csipkes, and documentation produced in connection with their depositions. At the hearing, Citroen's counsel provided documentation that was produced in connection with those depositions to support his argument that production of the tax returns is unnecessary.

That documentation should have been included with Citroen's response to Micron's motion to compel, and not provided for the first time at the hearing on the motion. Nevertheless, a review of the documentation actually supports Micron's claim that Citroen did have a financial interest or received financial benefits from certain of these other entities. While Citroen argues that Micron approved of these benefits, the individuals who purportedly approved the arrangement—Miller and Csipkes—are the individuals that Micron now claims were complicit in the self-dealing scheme Citroen is alleged to have undertaken. In addition, Miller and Csipkes both testified that Citroen advised them not to disclose their financial or ownership in MOIAG to Micron's board.

As a result, the court concludes that Citroen's tax returns from 2004 to 2016 are relevant to Micron's claims and defenses, and sources do not exist from which Micron may otherwise readily obtain the information. Therefore, Micron's motion to compel Citroen to produce its tax returns, including attachments, schedules and forms for 2004 to 2016 is granted.

While Citroen previously responded that they did not have these documents, it is clear that Citroen did not undertake a reasonable search to obtain documentation within their possession, custody

or control, which includes a duty to search for documents which may not be in their actual possession but which they have a legal right to obtain. As such, the court will require Citroen to undertake a reasonable search and supplement their responses. Again, given Citroen's cavalier position towards their obligations under Rule 34, Citroen is also ordered to either execute authorizations so that Micron may obtain the documents directly from the Internal Revenue Service[1], or provide the identifying and contact information for their accountants and tax preparers/consultants for the relevant time period so that Micron may subpoena the records.

Again, the parties are directed to meet and confer and enter into a mutually agreeable stipulation concerning a protective order to protect the confidentiality of these documents, and submit the stipulation and a proposed order to the court.

**B. Expenses**

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

The court does not find that Citroen's non-disclosure, responses or objections were substantially justified. Nor do other circumstances make an award of expenses unjust. While Citroen's counsel offered to come to an agreement regarding production of the tax returns toward the end of the hearing, that was only after Micron was forced to engage in multiple meet and confer sessions, file a motion, reply, and

---

[1] The 10th Circuit has held that a district court did not abuse its discretion in ordering a party to sign authorizations to release documents from non-parties when the plaintiff had ignored his responsibility to turn over information. *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001).

sur-reply, and attend a lengthy hearing. Therefore, Micron's request that it be awarded reasonable expenses, including attorney's fees incurred in connection with this motion is granted. Micron shall file a document setting forth the reasonable expenses requested on or before **September 8, 2017**. Citroen has until **September 20, 2017** to file a response. Micron will then have until **September 27, 2017**, to file a reply, if necessary. The court will then issue an order on the amount of reasonable expenses to be awarded.

Citroen's counter-request for sanctions is denied.

### III. CONCLUSION

Micron's Motion to Compel (ECF No. 42) is **GRANTED** as follows**:**

(a) Citroen has **THIRTY (30) DAYS** from the date of this Order to undertake a reasonable search and supplement their responses and produce documents reflecting income, funds or benefits Citroen received from Micron, MOIAG, Technica, Metallikon, K&B and SADEK from 2004 to 2016.

(b) Within **THIRTY (30) DAYS** of the date of this Order, Citroen shall provide Micron with the identification and contact information for accountants and tax preparers/consultants utilized by Citroen from 2004 to 2016, so that Micron may subpoena documents from their accountants and tax preparers reflecting income, funds or benefits Citroen received from Micron, MOIAG, Technica, Metallikon, K&B and SADEK between 2004 and 2016.

(c) Citroen has **THIRTY (30) DAYS** from the date of this Order to undertake a reasonable search and supplement their responses and produce tax returns, including attachments, schedules and forms for 2004 to 2016.

(d) Citroen is also ordered to either execute authorizations so that Micron may obtain the documents directly from the Internal Revenue Service, or provide the identifying and contact information for their accountants and tax preparers/consultants for the relevant time period so that Micron may subpoena the records.

(e) The parties are directed to meet and confer and enter into a mutually agreeable stipulation concerning a protective order to protect the confidentiality of these documents, and submit the stipulation and a proposed order to the court.

(f) Micron's request for reasonable expenses, including attorney's fees, incurred in connection with this motion is granted. Micron shall file a document setting forth the reasonable expenses requested on or before **September 8, 2017**. Citroen has until **September 20, 2017** to file a response. Micron will then have until **September 27, 2017**, to file a reply, if necessary.

**IT IS SO ORDERED.**

DATED: August 28, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE