# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ROBERT L. CITROEN, LAW CORP.,

    Plaintiff,

  vs.

MICRON OPTICS, INC.,

    Defendant.

3:16-cv-00570-RCJ-WGC

**ORDER**

This case arises out of the alleged breach of an assigned settlement agreement. Pending before the Court are two motions for summary judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

    **A.    Facts Alleged in the Verified Complaint**

As of April 1, 2014, Plaintiff Robert L. Citroen, Law Corp. ("RLC") and Defendant Micron Optics, Inc. ("Micron") were parties to a Stock Purchase Agreement ("the Agreement"). (Compl. ¶ 10, ECF No. 1-1, at 4). Under the Agreement, Micron was to pay RLC $12,500 per quarter for ten years. (*Id.* ¶ 12). Micron made seven payments from July 1, 2014 to January 1, 2016 but failed to make the April 1, 2016 payment or any payment thereafter. (*Id.* ¶ 13).

///

///

**B.      Facts Alleged in the Counterclaim**

**1.      Citroen's Business Interests**

Counterdefendant Robert L. Citroen was a member of Micron's board of directors since sometime prior to 2000 until November 4, 2011. (*See* Answer & Countercl. ¶ 12, ECF No. 5). In or around 2004, Micron Optics International A.G. ("MOIAG") was formed as a Liberian entity to resell Micron's products in Asia. (*Id.* ¶ 14). MOIAG's stock was held equally by Karlsson & Bergkvist (Schweiz) A.B. ("K&B") and Metallikon A.G. ("Metallikon") until 2014. (*Id.*). K&B is a Swiss entity controlled by Andrei Csipkes and owned by Csipkes's mother, and Metallikon is a Liberian entity owned or controlled by Citroen. (*Id.* ¶¶ 15–16). Csipkes was Micron's Chief Operating Officer from 2000 to 2015. (*Id.* ¶ 19). Citroen failed to disclose his interest in Metallikon or Csipkes's interest in K&B to Micron's officers, directors, or shareholders. (*Id.* ¶ 17). MOIAG profited from its relation with Micron and distributed those profits to its shareholders Metallikon and K&B. (*Id.* ¶ 18). As owner or controller of Metallikon, a shareholder of MOIAG, Citroen profited when MOIAG did while also serving as a director of and legal counsel to Micron. (*Id.*). In 2007, Citroen and Csipkes formed Technica, S.A. ("Technica") to manufacture optical products and components for Micron in China, and Technica's stock was held equally by Metallikon and K&B until 2014. (*Id.* ¶ 20). Citroen failed to disclose his or Csipkes's interests in Technica to Micron's officers, directors, or shareholders. (*Id.* ¶ 21). Technica profited from its relation with Micron and distributed those profits to its shareholders Metallikon and K&B. (*Id.* ¶ 21). As owner or controller of Metallikon, a shareholder of Technica, Citroen profited when Technica did while also serving as a director of Micron as well as its legal counsel. (*Id.*). Metallikon and K&B transferred their interests in Technica to other entities in July 2014. (*Id.* ¶ 20).

### 2. Citroen's Federal Convictions

Citroen was a member of the State Bar of California from 1978 until he voluntarily resigned in 2008 two months before pleading guilty to federal crimes related to passport fraud. (*Id.* ¶¶ 9, 22–26). Citroen failed to disclose his convictions to Micron's officers, directors, or shareholders, and he continued to provide legal advice to Micron and to charge it for those services, totaling $132,233.70. (*Id.* ¶¶ 25–29).

### 3. The Agreement

On or about April 1, 2014 Micron entered into the Agreement with Metallikon and K&B under which the latter entities would sell their MOIAG stock to Micron for $100,000. (*Id.* ¶ 32). The Agreement also represented the settlement of a purported debt owed by MOIAG to S.A. des Establissements Karoly ("SADEK") for various services. (*Id.* ¶ 33). Under the Agreement, Micron would assume a settled amount of $500,000 in debt to SADEK, payable in quarterly installments of $12,500. (*Id.*). The same day, SADEK assigned its interest in the Agreement to RLC ("the Assignment"), acknowledging that RLC, as SADEK's subcontractor, had provided the most vital services to MOIAG. (*Id.* ¶ 34). "In other words, the purported obligation and debt owed by MOIAG (operated by Csipkes and Citroen) to SADEK, which supposedly resulted from services performed by [RLC], was passed along as a debt and obligation to Micron." (*Id.* ¶ 35). Citroen failed to disclose his and RLC's interests in the Agreement to Micron's directors or shareholders. (*Id.* ¶¶ 36–37). Micron made seven quarterly payments under the Agreement but stopped making payments after March 2016 when it discovered Citroen's 2008 resignation from the State Bar of California, his federal convictions, and his control, ownership, and/or financial interests in Metallikon, MOIAG, and Technica, none of which he had previously disclosed. (*Id.* ¶¶ 39–41).

### C. Procedural History

RLC sued Micron in state court for breach of contract, unjust enrichment, conversion, anticipatory breach, and misrepresentation. Micron removed, answered, and filed counterclaims against RLC for breach of contract, contractual and tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraud in the inducement, and constructive fraud. Micron also listed counterclaims against Citroen in his personal capacity for tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraud in the inducement, constructive fraud, and aiding and abetting fraud. RLC answered the Counterclaim and asked the Court to dismiss the counterclaims brought against Citroen in his personal capacity. The Court denied the motion, ruling that although Citroen was not a necessary party under Rule 19, he could be permissively joined as a Counterdefendant under Rule 20. RLC moved for partial offensive summary judgment on the issue of liability for breach of contract, or, in the alternative, for a ruling that it is subject only to contractual defenses that would have been valid if asserted by Micron against MOIAG but not those defenses that can only be asserted against RLC. The Court granted the motion in part, ruling that Micron breached the Agreement, but denying the motion without prejudice as to affirmative defenses. Micron has now moved for offensive summary judgment on its counterclaims and its affirmative defense of rescission, and RLC has moved for summary judgment against the Counterclaim.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even if the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

#### A. Micron's Affirmative Defense of Rescission and Counterclaims

#### 1. Rescission

Under Nevada contract law, a trial court has discretion to rescind a contract, *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 & n.28 (Nev. 2007) (citing *Havas v. Alger*, 461 P.2d 857, 860 (Nev. 1969)), and one basis for rescission is fraud in the inducement, *id.* at 713 n.29 (citing *Havas*, 461 P.3d at 859). To establish fraud in the inducement, one must prove by clear and convincing evidence: (1) a false representation; (2) knowledge or belief that the representation

was false (or knowledge that it had an insufficient basis for making the representation); (3) intent to induce consent to the agreement; (4) justifiable reliance upon the misrepresentation; and (5) resulting damage. *J.A. Jones Constr. v. Lehrer McGovern Bovis*, 89 P.3d 1009, 1018 (Nev. 2004).

Most of Micron's motion consists of twenty-five pages of extraordinarily confusing allegations concerning Citroen's, former Micron CEO Jeff Miller's, and former Micron COO Andrei Csipkes's activities related to various entities. Only some of the allegations are relevant to the claims at issue in the case, and it is difficult to sort through them. The allegations and supporting evidence are so confusing that the Court is tempted to deny summary judgment on that basis alone, but the Court will do its best to parse the motion and evidence submitted.

As relevant to the fraud defense, Micron argues that RLC (through Citroen) fraudulently concealed Citroen's, Csipkes's, and Miller's personal financial interests in MOIAG and related entities, and that Micron justifiably relied when it approved the Agreement, under which Micron purchased Metallikon's and K&B's MOIAG stock for $100,000 and assumed $500,000 in debt to SADEK. Most importantly, Micron argues that had it known Citroen, it's former attorney and director, in fact owned or controlled Metallikon and was to be the immediate assignee of SADEK's right to receive $500,000 under the Agreement, it would not have entered into the Agreement. The Court rejects this theory. Micron does not appear to dispute that Citroen had not been its attorney or director for over two years when Micron entered into the Agreement in 2014. Citroen therefore had no affirmative duty in April 2014, either as an attorney or director, to reveal his interest in the Agreement to Micron lest the failure to do so constitute fraud by omission. Micron also appears to argue that Citroen directed Miller and/or Csipkes to conceal Citroen's interest in the Agreement. But Micron must sue Miller and/or Csipkes for their alleged

fraud, not Citroen, who owed no duty to Micron at the time of these alleged activities. The Court denies summary judgment on the affirmative defense of fraud in the inducement. This issue is much too uncertain for summary judgment based on the facts adduced and must be tried to a jury.

### 2. Breach of Contract

Micron alleges RLC violated a contract to provide legal services because between 2008 (when Citroen voluntarily resigned his bar membership) and 2011 (when Citroen resigned as a director of Micron and stopped providing those services), Micron paid him for legal services when he had no license. Micron has adduced evidence showing that in 2008, Citroen was convicted of possessing false identification documents in violation of 18 U.S.C. § 1028(a)(3) and making false statements in violation of 18 U.S.C. § 1001(a)(2), (Judgment of Conviction, ECF No. 73-6), had his voluntarily resignation of bar membership accepted that year, (Order, Supreme Court of Cal. Case No. 07-W-14821, ECF No. 73-7), and did not reveal his convictions to anyone at Micron until 2016, (Citroen Dep. 78:14–17, ECF No. 73-3). Micron paid RLC $132,223.70 for legal services while Citroen was not a licensed attorney. (Dillard Decl. ¶ 13, ECF No. 47; RLC Invoices and Micron Payment Records, ECF No. 52).

Counterdefendants argue in response that there was never any contract to provide legal services after January 11, 2008, but only "marketing and business advice." But the invoices from RLC adduced clearly use the letterhead "ROBERT L. CITROËN LAW CORPORATION" during the entire relevant period. (RLC Invoices, ECF No. 52). A reasonable jury could not find that Micron did not think or should not have thought it was paying for the services of a licensed attorney based on this evidence. Regardless of the existence of any separate written agreement, and absent any evidence that the client knew otherwise, routine periodic billings for business

advice from a "LAW CORPORATION" implies a term of agreement that the services are being provided by a licensed attorney. Micron is entitled to offensive summary judgment on its counterclaim for breach of contract.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty

Micron alleges RLC breached its implied duty of good faith under its contract to provide legal services to Micron by failing to notify Micron that Citroen had lost his law license and for other reasons. Micron brings the claim in contract and in tort. The contractual bad faith claim is moot given the victory on the breach of contract claim. The tortious bad faith claim is not moot, although it is redundant with the breach of fiduciary duty claim. The Court must simply sort out precisely which standard applies in the present situation: the duty of loyalty owed by corporate directors, *see Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 & n.60 (Nev. 2006) (citing Nev. Rev. Stat. § 78.138(7)) ("[D]irectors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law."), the duty owed by parties to contracts in special relationships, *see, e.g.*, *Allstate Ins. Co. v. Miller*, 212 P.3d 318 (Nev. 2009), or some other standard.

In its motion, Micron argues only the fiduciary duty issue, and the Court agrees that is the proper standard. The Court finds there to be no genuine issue of material fact that the provision of (and billing for) legal services to a corporation by one of its directors while that director is not a licensed attorney is misconduct and a knowing violation of the law, as well as fraud where the fact of a lack of a license to practice law is concealed, as here. Micron is entitled to offensive summary judgment on the breach of fiduciary duty claim. This is not redundant with the breach of contract claim, because the present claim potentially permits punitive damages, whereas the breach of contract claim does not. *See* Nev. Rev. Stat. § 42.005(1).

### 4. Unjust Enrichment

Micron does not appear to bring this counterclaim as an alternative to its breach of contract counterclaim based on legal services provided by RLC. Rather, the counterclaim is brought as an alternative to the fraud-type counterclaims based on the Agreement and Assignment. Micron is not entitled to summary judgment on this claim. Indeed, the claim is subject to dismissal, although Counterdefendants have not asked the Court to dismiss it, so the Court will not do so at this time. Micron does not allege that it bestowed a benefit on RLC or Citroen that in equity should be returned. *See Leasepartners Corp., Inc. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997) (citing *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (citing *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))). Micron does not allege RLC or Citroen were parties to the Agreement or that Micron was a party to the Assignment. Nor does it allege it received nothing of fair value under the Agreement. This claim sounds in fraud, which is addressed elsewhere.

### 5. Fraud in the Inducement, Constructive Fraud, and Aiding and Abetting

As with the parallel affirmative defense, Micron is not entitled to summary judgment on these counterclaims with respect to Micron's entry into the Agreement. Insofar as the counterclaims are based on payment for legal services to a non-lawyer, they are redundant with the breach of contract and breach of fiduciary duty counterclaims.

## B. Counterdefendants' Motion for Summary Judgment

Counterdefendants argue that Citroen's participation in the creation of MOIAG in 2004, the operation of MOIAG from 2004 to 2014, and Micron's acquisition of MOIAG in 2014 were protected by the business judgment rule and therefore cannot be the basis of any claims against Citroen. The Court denies the motion. Those statements may or may not be true, but the Court

simply has no occasion to rule on them. Micron's counterclaims are not based on any alleged usurpation of corporate opportunities, as implied by Counterdefendants' motion. They are based on alleged fraud, an alleged breach of a contract to provide legal services, and the alleged breach of fiduciary duty. And, as noted *supra* in the context of Micron's counterclaim for breach of fiduciary duty, there is no genuine issue of material fact that Counterdefendants' continued billing of Micron for legal services after Citroen no longer had a law license was not protected by the business judgment rule.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 73) is GRANTED IN PART and DENIED IN PART. Micron is entitled to offensive summary judgment on its counterclaims for breach of contract and breach of fiduciary duty. The counterclaim for contractual bad faith is moot. The fraud-based counterclaims and the affirmative defense of fraud in the inducement, as well as damages on the breach of contract and breach of fiduciary duty claims, remain for a jury.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 76) is DENIED, and the Clerk shall correct the docket to reflect that ECF No. 77 is not a motion.

IT IS SO ORDERED.

Dated this 17th day of May, 2018.

_____
ROBERT C. JONES
United States District Judge